**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ROBERTINO SPINETTA,

Plaintiff,

- v -

FETCH REWARDS, LLC and CARMEN GONZALEZ-MEISTER,

Defendants.

Civil Action No.: 1:26-cv-374

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Robertino Spinetta, by and through his undersigned attorneys, brings this Complaint against Defendants Fetch Rewards, LLC ("Fetch") and Carmen Gonzalez-Meister ("Gonzalez-Meister"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for disability discrimination, caregiver discrimination, familial status discrimination, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, as well as unlawful deductions from wages in violation of New York Labor Law § 193.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

4. Plaintiff will file a Charge of Discrimination, arising out of the facts described

here, with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act ("ADA"). Upon receiving a Notice of Right to Sue from the EEOC, Plaintiff will seek leave to amend his Complaint to include ADA claims against Defendant Fetch.

5. Within 10 days of the commencement of this action, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## PARTIES

6. Plaintiff Robertino Spinetta is a resident of the State of New York who performed his employment duties remotely from his home in Brooklyn, New York.

7. At all relevant times, Plaintiff was an "employee" of Defendants under all relevant statutes.

8. Defendant Fetch Rewards, LLC is a technology company with approximately 1,000 employees and a principal place of business at 1050 East Washington Avenue, 2nd Floor, Madison, WI 53703.

9. At all relevant times, Fetch transacted business in New York and exercised control over Plaintiff's employment terms and conditions within New York City.

10. Defendant Gonzalez-Meister was at all relevant times employed by Fetch as its General Manager, Food & Beverage.

11. Gonzalez-Meister hired Plaintiff and was his first manager at Fetch.

12. Gonzalez-Meister exercised supervisory authority over Plaintiff and had the ability to affect the terms and conditions of Plaintiff's employment and did so by, among other

things, assigning his work, overseeing his work, evaluating his performance, and providing feedback.

13. Upon information and belief, Gonzalez-Meister is a citizen of and is domiciled in the State of California.

14. At all relevant times, Defendants were Plaintiff's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

### I. Spinetta is Hired by Fetch and Excels in his Role

15. Plaintiff received a Bachelor of Arts in Political Science with honors from the University of Buenos Aires in Argentina.

16. Before joining Fetch, Plaintiff had over 13 years of experience in the enterprise partnerships field, specializing in advertising technology and Consumer Packaged Goods brands.

17. At all relevant times, Plaintiff possessed all necessary qualifications for the position, including extensive experience in advertising technology sales.

18. Defendant hired Plaintiff on December 2, 2024, as Partner VP (Enterprise/Client Partnerships).

19. On July 28, 2025, Plaintiff's direct supervisor, Jagdeep Wadhwani ("Wadhwani"), conducted a performance review in which he told Plaintiff he was "exceeding goals tremendously," doing "amazing work" and had "really impressive numbers."

20. By October 2025, Plaintiff had secured over $1.3 million in Quarter 4 revenue, tracking at approximately 160% of his assigned sales quota.

### II. Protected Disclosures and Supervisor Hostility

21. On August 25, 2025, Plaintiff informed Wadhwani and his skip-level manager,

Gonzalez-Meister, that his wife was pregnant and that she was having complications.

22. On or about September 3, 2025, Plaintiff notified Wadhwani that his wife was hospitalized due to Intrahepatic Cholestasis of Pregnancy (ICP), a condition posing immediate life-threatening risk to their unborn child.

23. On September 5, 2025, while Plaintiff was at the hospital dealing with this medical emergency, Wadhwani messaged him demanding he join internal meetings.

24. In a meeting on September 10, 2025, Wadhwani told Spinetta that his inability to predict his availability due to the medical crisis "doesn't really work in the work environment."

25. During that same meeting, Wadhwani criticized Plaintiff for not being "in front of your desk," explicitly linking performance concerns to Spinetta's physical presence at the hospital.

26. On September 19, 2025, Plaintiff's daughter was born prematurely and admitted to the NICU for intensive care.

27. Due to her premature birth, Plaintiff's daughter required intensive medical interventions, including respiratory support, feeding support, temperature regulation and continuous monitoring.

28. These medical conditions substantially limited her major life activities, including breathing, eating, temperature regulation, and other physiological functions necessary for survival.

29. On September 25, 2025, Plaintiff informed Wadhwani and Gonzalez-Meister that his daughter would likely remain in the NICU for several weeks.

30. That same day Plaintiff informed Wadhwani that he planned to take New York Paid Family Leave (NYPFL).

## III. Protected Leave and Interference

31. Plaintiff took approved NYPFL from October 13, 2025, through October 17, 2025.

32. On October 15, 2025, while Plaintiff was on protected leave, Wadhwani emailed the client and falsely stated that Plaintiff's prior financial modeling contained "incorrectly stated numbers."

33. Wadhwani had approved the report before Plaintiff took leave.

34. Upon returning from leave on October 20, 2025, Plaintiff validated his models with Defendant's Data Science team, proving Wadhwani's claims of error were false.

## IV. Return to Work, Praise, and The Adverse Action

35. On October 21, 2025, the client signed a Statement of Work for a $700,500 expansion deal Plaintiff had led since April.

36. On October 22, 2025, Defendant's Chief Revenue Officer, Robin Wheeler, posted in the company-wide Slack channel: "LFG! This is so huge! Way to set the precedent for a new way to partner with our clients!," specifically praising Plaintiff's deal.

37. At 9:00 AM on October 23, 2025, Plaintiff informed Wadhwani he needed an accommodation to leave early the next day to pick up his daughter from the NICU; Wadhwani approved the request.

38. At approximately 4:00 PM that same day — seven hours after the accommodation request — Wadhwani and HR Business Partner Bianca Cobb terminated Plaintiff's employment.

39. During the termination meeting, Ms. Cobb stated: "We tried to take your family situation... the timing of this information... and give you a package that's beyond our standard."

40. Ms. Cobb further admitted on the recording that Plaintiff "did great work" and

was a "great person."

41. Defendant provided no written warnings, no Performance Improvement Plan, and no documented cause for the termination.

## V. Evidence of Pretext and Pattern

42. Defendant stated the reason for termination was a "skill gap" regarding "brand commerce" and "shopper marketing," a qualification that did not appear in the original job description.

43. Immediately following the termination, Defendant posted a job opening for a similar role that removed the "brand commerce" and "shopper marketing" requirement, demonstrating the reason was pretextual.

44. Two other employees reporting to Gonzalez-Meister were also separated from employment shortly after disclosing pregnancy or medical accommodation needs.

45. As a result of the termination, Plaintiff forfeited approximately 7,000 RSUs that were scheduled to vest within five weeks of his discharge.

## FIRST CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**
***Against All Defendants***

46. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

47. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Spinetta because he was a member of a protected class.

48. Plaintiff is a member of a protected class under the NYSHRL based on his familial status as a parent and because of his association with persons with disabilities.

49. As set forth in detail above, Defendants discriminated against Plaintiff and

subjected him to adverse employment actions.

50. Defendant terminated Plaintiff because of his familial status and his association with a person with a disability.

51. Defendant's explicit reference to the "timing of this information" and "family situation" during the termination meeting constitutes direct evidence of discriminatory motive.

52. As a direct and proximate result of the unlawful employment practices of Defendants, Plaintiff has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

53. Accordingly, Defendants discriminated against Plaintiff because of his familial status and his association with a person with a disability, in violation of his statutory rights as guaranteed by the NYSHRL.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of the NYSHRL)**
***Against All Defendants***

54. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

55. As set forth in detail above, Plaintiff engaged in activity protected under the NYSHRL, including by requesting schedule accommodations for NICU care and taking leave.

56. Defendants retaliated by subjecting Plaintiff to discrimination and adverse employment actions because of his protected activity in violation of Plaintiff's statutory rights.

57. Defendants were aware that Plaintiff opposed unlawful conduct and asserted his rights under the NYSHRL.

58. Plaintiff has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

59. Accordingly, Defendants retaliated against Plaintiff in violation of his statutory rights as guaranteed by the NYSHRL.

**THIRD CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
***Against All Defendants***

60. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

61. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Plaintiff because he was a member of a protected class.

62. Plaintiff is a member of a protected class under the NYCHRL as a caregiver and based on his association with persons with disabilities.

63. As set forth in detail above, Defendants discriminated against Plaintiff in the terms and conditions of his employment by treating Spinetta less well than his similarly situated coworkers.

64. Plaintiff's daughter and wife suffered from serious medical conditions constituting disabilities under the NYCHRL.

65. Plaintiff's supervisor, Wadhwani, made disparaging comments regarding Plaintiff's physical "desk presence" directly related to these medical crises.

66. Defendant terminated Plaintiff due to his status as a caregiver, association with his disabled family members, and the perceived inconvenience of his related schedule adjustments.

67. As a direct and proximate result of the unlawful employment practices of Defendants, Plaintiff has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

68. The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling him to punitive damages.

69. Accordingly, Defendants discriminated against Plaintiff in violation of his statutory rights as guaranteed by the NYCHRL.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYCHRL)**
***Against All Defendants***

70. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

71. As set forth in detail above, Plaintiff engaged in activity protected under the NYCHRL.

72. Defendants retaliated against Plaintiff by treating him less well than similarly situated employees and subjecting him to discrimination and adverse employment actions because of his protected activity in violation of the NYCHRL.

73. Defendants were aware that Plaintiff opposed unlawful conduct and/or asserted his rights under the NYCHRL.

74. As a result of this protected activity, Defendants retaliated against Plaintiff by engaging in conduct that was reasonably likely to deter an individual from engaging in such protected activity, in violation of the NYCHRL.

75. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

76. The conduct of Defendants has been intentional, deliberate, willful, malicious,

reckless, and conducted in callous disregard of the rights of Plaintiff, entitling him to punitive damages.

77. Accordingly, Defendants retaliated against Plaintiff in violation of his statutory rights as guaranteed by the NYCHRL.

**FIFTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYSHRL and NYCHRL)**
***Against Defendant Gonzalez-Meister***

78. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

79. Defendant Gonzalez-Meister aided, abetted, incited, compelled, or coerced Fetch's unlawful conduct, including discrimination based on familial status, caregiver status, and association with a person with a disability, and retaliation, against Plaintiff by actually participating in the conduct giving rise to the claims herein.

80. Gonzalez-Meister was aware of her role in the unlawful activity and knowingly assisted Fetch in its violations of the NYSHRL and NYCHRL.

81. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

82. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling him to punitive damages.

**SIXTH CAUSE OF ACTION**
**(Unlawful Deduction from Wages in Violation of New York Labor Law § 193)**
***Against Defendant Fetch***

83. Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

84. Plaintiff earned commissions on the $1.3 million in revenue booked during Q4 2025, tracking at 160% of his quota.

85. Defendant has failed to pay Plaintiff the commissions earned prior to his termination, in violation of the New York Labor Law.

86. Defendant's wholesale failure and refusal to pay Plaintiff his earned commissions constitutes an "unauthorized failure to pay wages, benefits or wage supplements" in direct violation of NYLL § 193, as amended by the No Wage Theft Loophole Act of 2021.

87. Defendant's violation of NYLL § 193 was willful.

88. As a direct and proximate result of Defendants' violation of NYLL Article 6, and pursuant to NYLL § 198(1-a), Plaintiff is entitled to recover the full amount of his unpaid commissions, plus liquidated damages equal to one hundred percent (100%) of that amount, in addition to an award of reasonable attorneys' fees, costs, and prejudgment interest.

## RELIEF

Plaintiff Robertino Spinetta demands judgment in his favor and against Defendants Fetch Rewards, LLC and Carmen Gonzalez-Meister as follows:

A. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, past and future lost earnings and all unpaid commissions earned through the date of termination;

B. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his emotional distress;

C. An award of punitive damages, in an amount to be determined at trial;

D. Prejudgment interest on all amounts due;

E. An award of Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Robertino Spinetta demands a trial by jury on all issues so triable of right.

Dated: January 21, 2026
New York, New York

**RISSMILLER PLLC**

By: Alex Rissmiller
______________________

Alex Rissmiller
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com
jliriano@rissmiller.com

*Attorneys for Plaintiff Robertino Spinetta*